Filed 9/15/20  P. v. Havens CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C087536 |
| Plaintiff and Respondent, | (Super. Ct. No. 15F2711) |
| v. | |
| AMANDA JEAN HAVENS, | |
| Defendant and Appellant. | |

Defendant Amanda Jean Havens pleaded no contest in April 2018 to multiple counts of elder abuse and agreed to a stipulated sentence of 17 years in prison.  The trial court imposed sentence in May 2018 and remanded her to correctional authorities.  The trial court subsequently became aware that the sentence imposed was unauthorized.  In June 2018, it vacated defendant's plea, amended the charges, and retook defendant's no contest plea.  The trial court soon realized that it again had erred, so it resentenced defendant a second time in July 2018, after defendant had noticed her appeal.

1

On appeal, defendant argues the June and July 2018 orders should be vacated because the court lacked jurisdiction to take her plea again and resentence her. We agree. Given our conclusion, we need not address defendant's alternative argument that the trial court violated the terms of the June 2018 plea agreement or otherwise imposed unauthorized sentences in June and July 2018.

Defendant also challenges other portions of her sentence, including the restitution fine. And, relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), she argues the trial court erred in imposing certain fines and fees without holding a hearing to determine her ability to pay them. We will vacate the orders entered in June and July 2018, remand the matter for the trial court to reconsider the restitution and parole revocation restitution fines imposed in May 2018, direct the trial court to prepare an amended abstract of judgment, and otherwise affirm the judgment entered in May 2018.

## FACTUAL AND PROCEDURAL BACKGROUND

Given defendant's contentions on appeal, we provide only a brief recitation of the facts. In 1989, defendant moved in with her mother and grandmother (the victim). Starting in 2010, the victim began needing full-time medical care. Defendant's mother quit her job to care for the victim; defendant also helped. Starting in November 2014, the victim became bedridden, but neither defendant nor her mother obtained medical care for the victim. Feeding and caring for the victim became more difficult. In May 2015, the fire department responded to a call that the victim was not eating. The victim was found emaciated, covered in excrement, and having difficulty breathing. The victim was taken to the hospital, where she died the following day at age 90 from sepsis due to multiple infections.

In May 2016, defendant was charged with murder (Pen. Code, § 187, subd. (a); count 1)[1] and elder abuse (§ 368, subd. (b); count 2)). As to count 2, it further was alleged defendant inflicted great bodily injury on the victim (who was aged 70 years or older) (§ 368, subd. (b)(2)(B)) and proximately caused the victim's death (§ 368, subd. (b)(3)(B) (hereafter § 368(b)(3)(B)).

On April 20, 2018, the parties agreed to add an additional count of elder abuse (§ 368, subd. (b); count 3), and a section 12022.7, subdivision (c) (hereafter section 12022.7(c)) enhancement to this count. Defendant then pleaded no contest to two counts of elder abuse. (§ 368, subd. (b); counts 2 & 3.) As to count 2, she admitted to proximately causing the death of the victim. (§ 368(b)(3)(B).) As to count 3, she also admitted to personally inflicting great bodily injury on a person aged 70 years or older. (§ 12022.7, subd. (c).) The court dismissed the remaining count and enhancements. Defendant agreed that her stipulated state prison sentence would be 17 years.

On May 17, 2018, the trial court sentenced defendant to state prison for an aggregate term of 17 years, as follows: four years for count 2 plus seven years for the section 368(b)(3)(B) enhancement (11 years total), and one year (one-third the midterm) consecutive for count 3 plus five years consecutive for the section 12022.7(c) enhancement (six years total). Defendant did not object, nor did she argue for a reduced term.

The trial court also imposed a $600 restitution fine (§ 1202.4, subd. (b)) and a corresponding $600 parole revocation restitution fine, suspended unless parole is revoked (§ 1202.45). With respect to the restitution fine, the trial court said, "So you had pled to two counts. So you have two restitution fines, both of $300. Those are imposed as to each count. So it would be $300 as to each count." The trial court similarly stated that

---

[1]     Undesignated statutory references are to the Penal Code.

3

the parole revocation restitution fine was "$300 as to each count." In addition, the trial court imposed an $80 court operations assessment (§ 1465.8) and a $60 court facilities assessment (Gov. Code, § 70373). The court also imposed and stayed a $730 fine, but did not specify the statutory basis for the fine. During the hearing, the trial court found that defendant lacked the ability to reimburse the costs of the legal assistance provided to her and declined to impose a fee pursuant to section 987.8. The trial court remanded defendant to correctional authorities.

During a hearing on May 30, 2018, the trial court told the lawyers the sentence it had imposed was unauthorized. The court explained that under section 1170.1, the term for the section 12022.7(c) enhancement attached to the subordinate term and therefore should only be one-third the midterm, rather than the full five years. The court noted this would reduce the sentence by three years four months, stating the issue had "escaped everybody's notice." The court agreed to reconvene a week later.

During a hearing on June 6, 2018, the court again noted, "[W]e all made the mistake." The court explained it would amend the information and add four counts of violating section 368, subdivision (b) (counts 3-6) and also a count of attempted false imprisonment (§§ 236/664; count 7). Defense counsel responded that she had discussed the proposed changes with defendant, and defendant informed the court that she agreed to the changes. The court stated it was vacating the plea entered in April 2018, and defendant pleaded no contest to the amended charges and admitted the section 368(b)(3)(B) enhancement to count 2 and the section 12022.7(c) enhancement to count 3.

The court then noted it already had added count 3 (elder abuse) in April 2018. In an apparent clerical error, the court stated it would "renumber" the four new counts of elder abuse (renumbered as counts 4-7) and add one count of attempted false imprisonment (renumbered as count 8). The court's modifications brought the total number of elder abuse counts to six. Defendant pleaded no contest to count 3, again

4

admitted the section 12022.7(c) enhancement, and did not object to the court's amendments.

The trial court sentenced defendant to state prison for an aggregate term of 17 years eight months. The court imposed various fines and fees, including a $300 "per count" restitution fine (§ 1202.4) and a corresponding $300 "per count" parole revocation restitution fine (§ 1202.45). The court explained the restitution fine "would be $300 per count, sadly. Sometimes on cases like this, I will impose $10,000 per count, but I chose to impose the minimum amount. I am required by law to impose at least $300 per count on restitution fines." The court also imposed a $780 "felony fine as to each count which is permanently stayed" without specifying the calculation or statutory basis for the fine.

On June 12, 2018, defendant filed a notice of appeal from the court's June 6, 2018 order and obtained a certificate of probable cause.

On July 23, 2018, after acknowledging an error during the June resentencing, the court resentenced defendant again to an aggregate term of 17 years in state prison. The court stated that "all previous orders, other than the sentencing structure, remain in place." The court did not vacate the prior sentence, nor did it dismiss any counts. The minute order for the July 2018 sentence included a $780 felony fee, including a $200 base fine calculated under section 672, indicating that "[s]aid fine is stayed."[2]

We subsequently granted defendant's request to construe her notice of appeal to include an appeal from the orders entered on April 20, May 17, June 6, and July 23, 2018.

---

[2] To the extent that a portion of the $730 unspecified fine imposed in May 2018 also included a fine under section 672, we note that such a fine is unauthorized. Section 672 is inapplicable here because it authorizes a fine only when no other fine is prescribed, and section 368 prescribes a fine for defendant's offense. (See *People v. Breazell* (2002) 104 Cal.App.4th 298, 304-305 [a court is foreclosed from imposing a fine under § 672 if a base fine for the offense is otherwise prescribed]; see also *People v. Uffelman* (2015) 240 Cal.App.4th 195, 200-201 [accord].)

5

DISCUSSION

I

Defendant contends her convictions and sentence should be reversed because the court remanded her to custody in May 2018 and therefore lacked subject matter jurisdiction on June 6 when it vacated her prior plea, amended the information, accepted a new plea, and resentenced her. Defendant further argues the trial court lacked jurisdiction on July 23 when it again resentenced her.

The People respond that the trial court had authority in June and July to correct the mistakes in April and June that resulted in an unauthorized sentence. According to the People, the parties made a mutual mistake of law in April when they agreed to a plea deal with a stipulated 17-year sentence, but defendant incorrectly pleaded no contest to counts and enhancements that could not result in a 17-year sentence. The People further argue the court in July was only correcting errors, so that defendant's sentence and convictions would match the June plea agreement.

A.     *The sentence imposed in May 2018 was unauthorized*

As defendant and the People (and the trial court) acknowledge, the 17-year aggregate sentence imposed in May 2018 was unauthorized. (*People v. Scott* (1994) 9 Cal.4th 331, 354 [an unauthorized sentence is one that could not lawfully be imposed under any circumstance in the particular case].) Under section 1170.1, the trial court was required to impose one-third the midterm (20 months) consecutive on the section 12022.7(c) enhancement to the subordinate count 3, rather than the full five years consecutive. (§ 1170.1, subd. (a) ["[t]he subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of the term imposed for any specific enhancements applicable to those subordinate offenses"]; see also *People v. Brantley* (2019) 43 Cal.App.5th 917, 921.)

6

B.      *The trial court lacked jurisdiction to amend defendant's plea in June 2018 and to resentence defendant in July 2018*

Under the common law, a trial court is divested of subject matter jurisdiction once execution of a sentence has begun. (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 455; see also *People v. Karaman* (1992) 4 Cal.4th 335, 344 [trial court loses jurisdiction over the defendant when it relinquishes custody of her].) One exception is that a trial court may on its own motion correct a clerical error at any time, but not a judicial error. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; *In re Candelario* (1970) 3 Cal.3d 702, 705.) A clerical error is made in recording the judgment, while a judicial error is made in rendering the judgment. (*In re Candelario, supra*, at p. 705.) Trial courts also may correct an unauthorized sentence at any time. (*People v. Scott, supra*, 9 Cal.4th at pp. 354-355; see also *People v. Turrin* (2009) 176 Cal.App.4th 1200, 1205.)

In addition, under the version of section 1170, subdivision (d) that was in effect when the trial court retook defendant's plea on June 6, 2018 (hereafter former section 1170(d)), within 120 days of the commitment, a trial court could "recall a sentence on its own motion for any reason rationally related to lawful sentencing" and "impose any otherwise lawful resentence," so long as the new sentence does not exceed the original sentence. (*Dix v. Superior Court, supra*, 53 Cal.3d at pp. 455-456.) As courts have explained, former section 1170(d) is "limited to sentencing and says nothing about modifying the judgment." (*People v. Nelms* (2008) 165 Cal.App.4th 1465, 1472.)

Here, the trial court in June 2018 vacated defendant's prior plea, added counts, and took a new plea from defendant. Although the ultimate effect of these actions (after the July 2018 corrections) may have been to correct an unauthorized sentence due to the parties' mutual mistake of law, they exceeded the scope of the trial court's power under former section 1170(d) and the common law. (See, e.g., *People v. Espinosa* (2014) 229 Cal.App.4th 1487, 1496-1497 [trial court lost subject matter jurisdiction when the defendant filed appeal and therefore had no authority to modify a jury verdict by reducing

7

a first degree murder conviction to second degree murder]); *People v. Blount* (2009) 175 Cal.App.4th 992, 998 [trial court lacked authority under former § 1170(d) to alter the terms of a plea agreement agreed to by the parties and the trial court]; *People v. Alanis* (2008) 158 Cal.App.4th 1467, 1474 [trial court lost subject matter jurisdiction when the defendant appealed and therefore had no authority to allow defendant to withdraw his plea].)

Given that defendant was remanded to correctional custody on May 17, the trial court lacked subject matter jurisdiction for the actions it took in June 2018, even if the parties agreed. (See *People v. Nelms, supra*, 165 Cal.App.4th at p. 1473 [jurisdiction not conferred based on parties' agreement to modify the judgment].) The plea defendant entered in June 2018 is accordingly null and void. (See *People v. Scarbrough* (2015) 240 Cal.App.4th 916, 923 [any action taken by trial court when it lacks jurisdiction to do so is null and void].) The trial court's subsequent actions to correct the sentence in July 2018 are also therefore null and void, especially since defendant also had filed a notice of appeal in the intervening weeks. (See *People v. Perez* (1979) 23 Cal.3d 545, 554 ["[t]he filing of a valid notice of appeal vests jurisdiction of the cause in the appellate court until determination of the appeal and issuance of the remittitur"]; *People v. Cunningham* (2001) 25 Cal.4th 926, 1044 [" 'an appeal from an order in a criminal case removes the subject matter of that order from the jurisdiction of the trial court' "].)

C.  *Remedy*

We next consider the matter of remedy. Citing *People v. Hester* (2000) 22 Cal.4th 290, defendant concedes that because she pleaded no contest in return for a 17-year stipulated sentence, she is estopped from challenging on appeal the sentence imposed in May 2018 based on the April 2018 plea. In such situations, "appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack fundamental jurisdiction. The rationale behind this policy is that defendants who have received the benefit of their bargain should

8

not be allowed to trifle with the courts by attempting to better the bargain through the appellate process. . . . 'When a defendant maintains that the trial court's sentence violates rules which would have required the imposition of a more lenient sentence, yet the defendant avoided a potentially harsher sentence by entering into the plea bargain, it may be implied that the defendant waived any rights under such rules by choosing to accept the plea bargain.' " (*Id.* at p. 295, italics omitted.)

Similar to *Hester*, defendant bargained for the benefit of avoiding a murder charge in exchange for a 17-year stipulated prison sentence. Defendant further indicated her agreement to the disposition by failing to object or argue for a reduced sentence during the May 2018 sentencing hearing. Pursuant to *Hester*, we will affirm the sentence imposed by the trial court in May 2018.[3]

## II

Defendant contends the trial court erred in imposing the $600 restitution fine and corresponding $600 parole revocation restitution fine at the May 17 sentencing. According to defendant, the trial court failed to exercise its discretion because it mistakenly believed section 1202.4 required it to impose a $300 restitution fine on every count, rather than per case. The People respond that defendant forfeited the issue on appeal because she failed to object to the fine at the trial court, and defendant responds that her trial counsel was ineffective for failing to do so. In the alternative, the People argue we should uphold the fines as imposed because they are within the statutory range and therefore have not prejudiced defendant. Because the trial court misunderstood its

---

[3]    Given this conclusion, we need not address defendant's contention that the trial court violated the terms of the June 2018 plea agreement in failing to dismiss the murder count, adding an additional count of elder abuse, and imposing a sentence greater than the agreed-to amount. We also need not address defendant's contention that the trial court imposed an unauthorized sentence in June and July 2018.

9

discretion with respect to the restitution fine (and corresponding parole revocation restitution fine), we will proceed to the merits.

It is well established that criminal defendants are entitled to sentencing decisions made by a trial court exercising " 'informed discretion.' " (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8.) Under section 1202.4, subdivision (b), a court "shall impose a . . . restitution fine, unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record." The amount of the fine is in the discretion of the court, within a range of $300 to $10,000. (§ 1202.4, subds. (b)(1) & (d).) A court *may* elect to calculate the restitution fine as "the product of the minimum fine [i.e., $300] multiplied by the number of years of imprisonment the defendant is ordered to serve, multiplied by the number of felony counts of which the defendant is convicted." (§ 1202.4, subd. (b)(2).) Still, a court may only impose one restitution fine per case. (§ 1202.4, subd. (b); *People v. Sencion* (2012) 211 Cal.App.4th 480, 483.) The parole revocation restitution fine must be in the same amount as the restitution fine imposed under section 1202.4, subdivision (b). (§ 1202.45.)

Here, during the May 2018 sentencing hearing, the court stated that it was imposing "two restitution fines, both of $300." Given the court's subsequent explanation in June 2018 that "I am *required by law* to impose at least $300 per count on restitution fines" (italics added), we conclude the court misunderstood that it had discretion to impose a single $300 restitution fine (and corresponding parole revocation restitution fine) in this case. Under the circumstances, we will remand for the trial court to reconsider the restitution fine and parole revocation restitution fine.

### III

As defendant and the People acknowledge, the trial court in May 2018 imposed and stayed a $730 fine without identifying the statutory authority for this assessment. Although it is acceptable for the trial court to use shorthand references when imposing fees, fines, assessments, and penalties, the abstract of judgment must specifically

delineate the amounts and statutory basis. (*People v. Sharret* (2011) 191 Cal.App.4th 859, 864.) Given that the record contains no abstract of judgment for the sentence imposed in May 2018, we will direct the trial court to prepare one that details the statutory basis of all fines, fees, and penalties imposed on each count. (*See People v. High* (2004) 119 Cal.App.4th 1192, 1200-1201.)

IV

We next address defendant's argument that the trial court violated her right to due process by imposing fines and fees without holding a hearing to determine her ability to pay them. This argument relies primarily on *Dueñas*, which held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments under [ ] section 1465.8 and Government Code section 70373." (*Dueñas, supra*, 30 Cal.App.5th at p. 1164.) The *Dueñas* court also held that "although [ ] section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless and until the trial court holds an ability to pay hearing and concludes that the defendant has the present ability to pay the restitution fine." (*Ibid*.) Defendant acknowledges that the trial court declined to impose certain fines and fees based on her inability to pay, and requests that we strike the remaining fines and fees, or remand the matter for a hearing on her ability to pay.

The People argue defendant forfeited her *Dueñas* claim by failing to object on due process grounds or raise the issue of her ability to pay in the trial court. The People further argue defendant's restitution fines are constitutional, but they do not seek to uphold the imposition of the nonpunitive fines against defendant should she be unable to pay.

11

A.	Dueñas *was incorrectly decided*

We are not persuaded that the analysis used in *Dueñas* is correct.  Our Supreme Court is now poised to resolve this question, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, which agreed with the court's conclusion in *Dueñas* that due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court operations and court facilities assessments under section 1465.8 and Government Code section 70373.  (*Kopp*, at pp. 95-96, review granted, Nov. 13, 2019, S257844.)

In the meantime, we join the courts that have concluded that *Dueñas* was wrongly decided.  (See, e.g., *People v. Kingston* (2019) 41 Cal.App.5th 272; *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted Nov. 26, 2019, S258946 (*Hicks*); *People v. Aviles* (2019) 39 Cal.App.5th 1055; *People v. Caceres* (2019) 39 Cal.App.5th 917, 923-929 (*Caceres*).)  In support of its due process rationale, *Dueñas* relies on authorities in which courts have held it is unconstitutional to punish an indigent defendant or impede his access to the courts, solely on the basis of his poverty.  (*Dueñas, supra*, 30 Cal.App.5th at pp. 1165-1168, citing *In re Antazo* (1970) 3 Cal.3d 100, 103 [invalidating practice of requiring convicted defendants to serve jail time if they were unable to pay a fine or a penalty assessment], and *Griffin v. Illinois* (1956) 351 U.S. 12, 16-17, 19-20 [100 L.Ed. 891, 897-898, 899] [striking down a state practice of granting appellate review only to convicted criminal defendants who could afford a trial transcript].)  As courts have subsequently noted, the line of authorities in *Dueñas* addressing an indigent defendant's right of access to courts are inapplicable because the imposition of the challenged fines and assessments did not affect the ability of the defendant in *Dueñas* to present a defense at trial or to challenge the trial court's rulings on appeal.  (*Hicks, supra*, at p. 326, review granted Nov. 26, 2019, S258946; *Kingston, supra*, at pp. 279-280; *Aviles, supra*, at pp. 1068-1069; *Caceres, supra*, at p. 927; see also *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1038-1039 (conc. opn. of Benke, J.) (*Gutierrez*).)

12

Similarly, the authorities cited by *Dueñas* prohibiting incarceration for indigence alone are also inapplicable. (*Hicks, supra*, 40 Cal.App.5th at p. 326, review granted Nov. 26, 2019, S258946; *Caceres, supra*, 39 Cal.App.5th at p. 927.) Defendant faces at most a civil judgment should she be unable to pay. We disagree that any resulting negative consequences from a civil judgment constitute punishment rising to the level of a due process violation. (See *Caceres*, at p. 927 ["*Dueñas* cites no authority for the proposition that [the negative consequences from a civil judgment] constitute 'punishment' rising to the level of a due process violation"]; see also *Gutierrez, supra*, 35 Cal.App.5th at p. 1039 (conc. opn. of Benke, J.) [fines and fees imposed in *Dueñas* did not "satisf[y] the traditional due process definition of a taking of life, liberty or property"].)

B.      *Analysis under the Eighth Amendment*

To the extent imposing potentially unpayable fees or fines on indigent defendants raises constitutional concerns, we agree that such challenges are properly analyzed under the Eighth Amendment's excessive fines clause, which limits the government's power to extract cash payments as punishment for an offense. (*Aviles, supra*, 39 Cal.App.5th at pp. 1071-1072.)

"The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish. [Citations.] [A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." (*United States v. Bajakajian* (1998) 524 U.S. 321, 334 [141 L.Ed.2d 314, 329].) To determine whether a fine is excessive in violation of the Eighth Amendment, we consider "(1) the defendant's culpability; (2) the relationship between the harm and the penalty; (3) the penalties imposed in similar statutes; and (4) the defendant's ability to pay." (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2005) 37 Cal.4th 707, 728; *Gutierrez, supra*, 35 Cal.App.5th at pp. 1040-1041 (conc. opn. of Benke, J.).) Accordingly, although ability to pay may be part of the

13

proportionality analysis, it is not the only factor. (*Bajakajian, supra*, at pp. 337-338.) We review de novo whether a fine is excessive under the Eighth Amendment. (*Id.* at p. 336, fn. 10.)

We conclude the $600 restitution fine (or $300 restitution fine, should the trial court modify its decision), $80 court operations assessment, $60 court facilities assessment, and $730 fine are not grossly disproportionate to defendant's level of culpability and the harm she caused, based on her convictions for elder abuse and enhancements for proximately causing the death of the victim and personally inflicting great bodily injury on a person aged 70 years or older. Under the circumstances, the aggregate amount of fines, fees, and assessments is not excessive under the Eighth Amendment.

## DISPOSITION

The orders entered in June and July 2018 are vacated. The matter is remanded to the trial court to consider exercising its discretion under sections 1202.4 and 1202.45 with regards to the amount of the restitution and parole revocation restitution fines. The trial court is directed to prepare an amended abstract of judgment in accordance with this opinion and to forward a certified copy to the Department of Corrections and Rehabilitation. The judgment entered in May 2018 is otherwise affirmed.


          KRAUSE         , J.


I concur:


     DUARTE       , J.


14

MAURO, Acting P. J., Concurring and Dissenting.

I fully concur in the majority opinion except for part IV, pertaining to defendant's ability to pay the imposed fines, fees and assessments, as to which I dissent.

Because the record indicates the trial court intended to impose minimum restitution and parole revocation fines, I would conclude defendant did not forfeit her ability-to-pay challenge. The record also indicates the trial court determined defendant did not have the ability to reimburse for legal assistance.

In *People v. Dueñas* (2019) 30 Cal.App.5th 1157, the court held it is improper to impose certain fines or assessments without determining defendant's ability to pay. (*Id*. at pp. 1168, 1172.) Although some courts have subsequently criticized *Dueñas*'s legal analysis (see, e.g., *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted Nov. 26, 2019, S258946), *Dueñas* remains citable precedent. Until the California Supreme Court has had an opportunity to resolve the current split in authority, I would remand this matter to give the trial court an opportunity to consider defendant's ability to pay the imposed fines, fees and assessments.


      MAURO      , Acting P. J.